UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INTERNATIONAL SHIP REPAIR & MARINE
SERVICES, INC.,

    Plaintiff,

vs.                                                    Case No.: 8:10-cv-2049-T-26AEP

THE NORTHERN ASSURANCE COMPANY
OF AMERICA,

    Defendant.
_____/

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
## AND MEMORANDUM IN SUPPORT

Plaintiff, International Ship Repair & Marine Services, Inc. ("**ISR**"), by its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves for partial summary judgment on the issue of whether Wilfredo Morales-Montalvo was a temporary worker for purposes of the subject insurance policy. In addition, ISR seeks a finding that Northern is barred from asserting certain defenses to coverage pursuant to Section 627.426, Florida Statutes (2011) and the common law doctrine of estoppel. In support of this motion, ISR incorporates the Statement of Undisputed Material Facts being filed herewith and the following Memorandum of Law.

**WHEREFORE**, Plaintiff requests entry of partial summary judgment as follows:

    A.    Finding that the decedent was a temporary worked for purposes of the subject insurance policy;

    B.    Finding that Defendant will be estopped from asserting its second affirmative defense upon a showing of prejudice by Plaintiff;

C. Finding that Defendant has failed to preserve its coverage defenses under Section 627.426, Florida Statutes; and

D. Granting all further appropriate relief.

**MEMORANDUM OF LAW**

**I. INTRODUCTION**

By this action, ISR seeks declaratory relief to determine its rights and liabilities under an insurance contract between ISR and Defendant The Northern Assurance Company of America ("**Northern**"). ISR also seeks damages arising from Northern's breach of said insurance contract.

Northern denies liability, arguing that there is no coverage for ISR's claims because the Decedent, Wilfredo Morales-Montalvo ("**Morales**"), was an employee -- but not a "temporary worker" -- of ISR and thus excluded from coverage under the Policy. However, the undisputed material facts establish that Morales was in fact a temporary worker as he was employed by a third party and assigned to work at ISR's facility for the specific limited purpose of repairing a dry dock known as DD-1. Morales' assignment at ISR would have terminated with the completion of that short-term project. Accordingly, ISR requests partial summary judgment on the issue of whether Morales was a temporary worker under the Policy.[1]

In addition, there is no issue of material fact concerning whether Northern is barred from asserting most of its affirmative defenses to ISR's claims for coverage. Simply put, Northern failed to comply with Section 627.426, Florida Statutes, when it purported to reserve its rights with respect to ISR's claims. Moreover, as early as November 2008, Northern had knowledge of

---

[1] ISR is not requesting an award of damages at this time because its damages remain undetermined. Specifically, as of the date of this motion, it has not resolved the claim brought by the estate of Wilfredo Morales-Montalvo, as discussed below. Nonetheless, ISR requests a partial summary judgment on the issue of coverage and will present evidence of its ongoing damages at trial

2

the facts upon which it now relies in denying ISR's claims. As a result, it is estopped from asserting its affirmative defenses to ISR's claim for coverage under the Policy.

## II. BACKGROUND[2]

ISR is a full-service shipyard that repairs oceangoing tugs, barges, ships and other maritime vessels.[3] Advanced Technology, Inc. ("**ATI**") is a staffing company that specializes in supplying temporary workers to ship yards.[4] On or about March 28, 2005, ISR and ATI entered into the contract ("**ATI Agreement**").[5] By the ATI Agreement, ATI agreed, among other things, to supply temporary workers to ISR at such times as ISR had a need for and requested such temporary workers.[6]

Pursuant to paragraph 6.c. of the ATI Agreement, ATI agreed to procure liability coverage for itself and ISR as an additional named insured, as follows:

> 6.c.   <u>Commercial General Liability Insurance</u>.  Contractor [ATI] shall procure and maintain Commercial General Liability insurance in the amount of $1,000,000/$2,000,000, naming the Company [ISR] as an additional insured.[7]

Pursuant to paragraph 6.c of the ATI Agreement, ATI in fact procured the required liability insurance (the "**Policy**") for itself and ISR through Northern.[8]

In or about August 2006, ISR requested that ATI provide ISR with several ship fitters pursuant to the ATI Agreement.[9] ISR required the ship fitters for the purpose of effecting repairs

---

[2] Citations herein refer to the exhibits attached to ISR's Statement of Undisputed Facts filed herewith.

[3] Ex. 1, Affidavit of James D. Braukman (hereinafter "**Braukman Aff.**"), ¶ 2.

[4] Ex. 1, Braukman Aff., ¶ 3.

[5] Ex. 1, Braukman Aff., ¶ 3 and Exhibit A.

[6] Ex. 1, Braukman Aff., ¶ 4 and Exhibit A.

[7] Ex. 1, Braukman Aff., ¶ 5.

[8] Ex. 1, Braukman Aff., ¶¶ 6-7 and Exhibits B, C.

[9] Ex. 1, Braukman Aff., ¶ 8.

on an ISR dry dock, DD-1.[10] ISR needed the additional ship fitters from ATI for the purpose of meeting a short-term work load need.[11]

Morales was among the ship fitters provided to ISR by ATI.[12] ATI had hired Morales on or about August 7, 2006.[13] ATI was responsible for providing Morales with worker's compensation insurance, paying his payroll taxes, and providing him with income reporting documents required by the Internal Revenue Service.[14] On August 8, 2006, Morales arrived at ISR's ship yard facility for his first day of work at ISR's ship yard facility.[15] In accordance with its plans for him, ISR assigned Morales the temporary job of working on repairs to ISR's floating dry dock, DD-1.[16] Morales' assignment with ISR would have terminated after his work on DD-1 was no longer needed by ISR.[17]

In the afternoon of August 9, 2006, Mr. Morales was found unconscious on DD-1.[18] Morales was taken to a hospital where he was later pronounced dead.[19] On or about April 30, 2008, the estate of Morales filed a wrongful death action (the "Action") against ISR.[20] Therein, the Plaintiff in that Action seeks at least $12,000,000.00 in damages.[21] Since that filing, ISR has

---

[10] Ex. 1, Braukman Aff., ¶ 8.
[11] Ex. 1, Braukman Aff., ¶ 8.
[12] Ex. 1, Braukman Aff., ¶ 9.
[13] Ex. 1, Braukman Aff., ¶ 10.
[14] Ex. 1, Braukman Aff., ¶ 10.
[15] Ex. 1, Braukman Aff., ¶ 11.
[16] Ex. 1, Braukman Aff., ¶ 11.
[17] Ex. 1, Braukman Aff., ¶ 11.
[18] Ex. 1, Braukman Aff., ¶ 12.
[19] Ex. 1, Braukman Aff., ¶ 12.
[20] Ex. 1, Braukman Aff., ¶ 13.
[21] Ex. 1, Braukman Aff., ¶ 13

vigorously contested that lawsuit.[22] Soon after Morales' estate initiated the Action against ISR, ISR notified ATI and Northern of that Action.[23] ISR notified ISR of the Action, and requested a defense and confirmation of coverage under the Policy, no later than July 23, 2008.[24] ISR thereafter filed a limitation of liability action in federal court ("Limitation Action"), whereby ISR sought to limit any recovery in the Action to the value of DD-1.[25]

After months of communications back and forth, Northern sent ISR's counsel a letter dated November 23, 2008.[26] Therein, Northern agreed to provide a defense to ISR in the Action.[27] Subsequently, Northern paid ISR's legal costs from the inception of the Action through March 31, 2010.[28] Thereafter, however, Northern has failed to pay or defend its legal costs.[29] Since Northern's last payment for ISR's legal costs, ISR has incurred legal costs in an amount in excess of $109,000.00.[30]

By letter dated June 24, 2010, Northern informed ISR that it was denying any coverage for the Action.[31] Northern's purported basis for denying coverage for the Action is that Morales was an employee, and not a "temporary worker," for purposes of the Policy.[32] The Policy covers individuals who are injured who are not "employees" of the insured arising out of and in the

---

[22] Ex. 1, Braukman Aff., ¶ 13.
[23] Ex. 1, Braukman Aff., ¶ 14.
[24] Ex. 1, Braukman Aff., ¶ 14.
[25] Ex. 1, Braukman Aff., ¶ 15.
[26] Ex. 1, Braukman Aff., ¶ 16 and Exhibit D.
[27] Ex. 1, Braukman Aff., ¶ 16 and Exhibit D.
[28] Ex. 1, Braukman Aff., ¶ 17.
[29] Ex. 1, Braukman Aff., ¶ 17.
[30] Ex. 1, Braukman Aff., ¶ 18.
[31] Ex. 1, Braukman Aff., ¶ 19 and Exhibit E.
[32] Ex. 1, Braukman Aff., Exhibit E.

course of employment by the insured.[33] The Policy defines "Employee" to include a "leased worker," but "Employee" does not include a "temporary worker."[34] A "'Leased worker' means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. 'Leased worker' does not include a 'temporary worker.'"[35] A "temporary worker" is defined as "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." [36]

Therefore, Morales's death was a covered event because he was a "temporary worker" assigned to ISR to work on the short-term project of repairing DD-1.

## III.  ISR IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

### A.  Legal Standard for Summary Judgment.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" if it is a legal element of the claim under applicable substantive law that may affect the resolution of the action. Id. at 248. An issue is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. Id. The moving party bears the initial burden of showing the court, by reference to the record, that there are no genuine issues of material fact to be decided at trial.

---

[33]  Ex. 1, Braukman Aff., Ex. C, Northern Policy, Section I - Coverages, Coverage A(2)(e).

[34]  Ex. 1, Braukman Aff., Ex. C, Northern Policy, Section V - Definitions.

[35]  Ex. 1, Braukman Aff., Ex. C, Northern Policy, Section V - Definitions.

[36]  Ex. 1, Braukman Aff., Ex. C, Northern Policy, Section V - Definitions.

Celotex Corp. v Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 9 L.Ed.2d 265 (1986). Once that initial burden is met, the party opposing summary judgment must go beyond the pleadings and "come forward with 'specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

In ruling on a motion for summary judgment, the court must view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (11th Cir. 1998); Clemons v Dougherty County Ga., 684 F.2d 1365, 1368 (11th Cir. 1982). The court must then decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Allen v Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Anderson, 477 U.S. at 251-52, 106 S. Ct. 2505). However, "the mere existence of a scintilla of evidence" in support of the nonmoving party is insufficient. Raske v. Dugger, 819 F.Supp 1046, 1052 (M.D. Fla. 1993) (citing Anderson, 477 U.S. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.)

As the duty of an insurer rests upon the legal effect of the provisions of an insurance policy, the interpretation of the policy is a matter of law for the Court to determine, and is therefore amenable to summary judgment. Nat'l Union Fire Ins. Co. of Pittsburgh v. Brown, 787 F.Supp. 1424, 1427 (S.D.Fla.1991) (citing Gulf Tampa Drydock Co. v. Great Atl. Ins. Co., 757 F.2d 1172, 1174 (11th Cir.1985)). "Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law."

Northland Cas. Co. v. HBE Corp., 160 F.Supp.2d 1348, 1358 (M.D.Fla.2001) (citing Talat Enter., Inc. v. Aetna Life & Cas., 952 F.Supp. 773 (M.D.Fla.1996)).

### B. Legal Standard for Interpreting the Policy.

Courts apply Florida law to insurance policies delivered in Florida. State Farm Mut. Auto. Ins. Co. v. Roach, 945 So. 2d 1160, 1163 (Fla. 2006). Under Florida law, issues of policy interpretation are purely questions of law. Eagle Am. Ins. Co. v. Nichols, 814 So. 2d 1083, 1085 (Fla. 4th DCA 2002). Courts must construe insurance policies according to the plain meaning of the policy language. Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). If the salient policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage, the policy is considered ambiguous. Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003). Ambiguous provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured. Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1138 (Fla. 1998).

"Exclusion clauses . . . are generally considered contrary to the fundamental protective purposes of insurance. Thus, the courts give a strict interpretation to exclusion clauses, as opposed to the liberal interpretation accorded coverage provisions." Hrynkiw v. Allstate Floridian Ins. Co., 844 So. 2d 739, 741-42 (Fla. 5th DCA 2003). "When determining the meaning and scope of an exclusion clause or other provisions of an insurance policy, legal niceties, technical terms, and phraseology extracted from the vernacular of the insurance industry should never transcend the common understanding of the ordinary person. Therefore, the proper inquiry is not whether a legal scholar can, with learned deliberation, comprehend the meaning of an insurance policy provision, but instead, whether it is understandable to a layperson." Id.

C.      **Morales Was a "Temporary Worker."**

The dispositive issue in this case is whether Morales was a "leased employee" of ISR, and thus excluded from coverage under the Policy, or a "temporary worker" and thus covered by the Policy.

Morales meets the definition of a "temporary worker" in the Policy in that he was "a person who is furnished to [ISR] . . . to meet seasonal or short-term workload conditions."[37] Here, the evidence is undisputed that Morales was an employee of ATI who was temporarily assigned to work at ISR. At the time of Morales' assignment to ISR, ISR required ship fitters for the purpose of meeting a short-term work load need, namely effecting repairs on DD-1. (Ex. 1, Braukman Aff. ¶ 8.) Morales was among the ship fitters provided to ISR by ATI. (Id. ¶ 9.) Indeed, Morales' assignment with ISR would have terminated by no later than the completion of the repairs on DD-1, and he had only worked at the ISR site for one day at the time of his death. (Id., ¶ 10.) Accordingly, the Court should find that Morales was a "temporary worker" under, and thus covered by, the Policy.

National Indemnity Company of the South v. Landscape Management Company, Inc., 963 So. 2d 361 (Fla. 4th DCA 2007), addressed the same "employee" exclusion as the one at issue here. In that case, the court held the exclusion did not apply where the injured claimant had been hired to fill a seasonal need for workers because he met the definition of a "temporary worker." Id. at 363-64. The insurer denied coverage because the insured company had interviewed and hired the claimant, and the claimant had not been "furnished" by an employment

---

[37]  The Policy does not define the phrase "short-term workload condition." The plain, ordinary meaning of that phrase is easily met here because Morales was hired for a temporary project that would last a finite period of time. Northern cannot create an ambiguity in the Policy by asserting a definition of the phrase which would be contrary to its plain, ordinary meaning. An insurance policy provision is ambiguous only if two inconsistent, reasonable interpretations are possible. See General American Life Ins. Co. v. Fisher, 517 So.2d 31, 34 (Fla. 3rd DCA 1988). Here, the only reasonable interpretation of the phrase is that a laborer provided to work on a short-term project is a "temporary worker" under the Policy.

9

agency. Id. at 362-63. The court found coverage, noting that a temporary worker could be furnished by any person or company, including another employee of the employer. Id. at 364. In the instant case, it is undisputed that Morales was "furnished" to ISR by ATI for the sole purpose of completing repairs on DD-1.

ISR recognizes that this Court denied summary judgment on a similar issue in Pacific Employers Insurance Company v. Wausau Business Insurance Company, 508 F. Supp. 2d. 1167 (M.D. Fla. 2007). In that case, an insured sought coverage for a claim by a worker, arguing he was furnished as a temporary worker rather than an employee within the meaning of an exclusion of coverage for bodily injury. The court held that there were genuine issues of material fact concerning whether the worker was furnished to meet short-term workload conditions and whether or not the employee was a leased worker or temporary worker within the meaning of the general liability policy. Id. at 1177-78. However, those issues of material fact do not exist in this case. Here, there is no question that Morales had worked at the ISR site for less than two days at the time of his death, and that but for his death, his assignment at ISR would have terminated upon the completion of the repairs to DD-1.[38] Thus, unlike the worker in Pacific Employers, Morales was a textbook example of a "temporary worker."[39]

---

[38] Indeed, during his deposition, Northern's corporate representative agreed that if "Mr. Morales was hired for a short-term workload condition, then Mr. Morales would meet the policy's definition of a temporary worker." Kula Dep., p. 189 L. 21 -- p. 190 L. 5.

[39] In the instant action, the Policy contains no definition of "short-term workload." Where "'the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous.'" Swire Pac. Holdings Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (quoting Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000)). Such ambiguities are "construed in favor of the insured and strictly against the drafter." Sphinx Intern., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 412 F.3d 1224, 1228 (11th Cir. 2005) (citing Swire Pac. Holdings, 845 So.2d at 165). Further, in cases "that involve exclusions to insurance contracts, the rule is even clearer in favor of strict construction against the insurer: exclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured." Sphinx Intern., Inc., 412 F.3d at 1228 (citing State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245, 1248 (Fla.1986)).

### D.     Northern's Affirmative Defenses Do Not Create Issues of Fact.

ISR is entitled to summary judgment with regard to each and every affirmative defense asserted by Northern because the affirmative defenses are irrelevant, inappropriately raised, or inapplicable to the instant action. Northern cannot meets its burden of proof as to *any* affirmative defense.

#### *1.     The Complaint states claims for relief.*

Northern's First Affirmative Defense is that the "[e]ach cause of action fails to state a claim upon which relief can be granted" [Dkt. 26, p. 4]. Count I of the Complaint states a claim for breach of contract. ISR sufficiently alleges the existence of a contract, the breach thereof, and resulting damages. See, e.g., Abbott Lab., Inc. v. Gen. Elec. Capital, 765 So.2d 737, 740 (Fla. 5th DCA 2000). Likewise, Count II state a claim for declaratory relief. ISR may bring this claim in the alternative to its claim for breach of contract. See Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Solutions, Inc., 744 F.Supp.2d 1305, 1310 (S.D.Fla.2010) (citing Johnson v. Geico Gen. Ins. Co., 2008 WL 4793616, at *3 (S.D. Fla. Nov.3, 2008) ("[T]he fact that Plaintiff could have simply brought an action for breach of contract does not prevent him from also seeking a declaratory judgment to establish coverage.") ISR sufficiently alleges that a dispute exists with respect to the interpretation of the Policy and the parties' rights and obligations thereunder.

Because ISR states claims for relief, it is entitled to summary judgment on Northern's first affirmative defense.

---

As shown above, Morales-Montalvo meets even the strictest construction of a "temporary worker" and "short-term workload condition" because he was hired for a temporary project that would last a finite period of time. Nonetheless, given the ambiguity in the Policy's definition of these terms, the Decedent's status as a temporary worker should be construed in favor of ISR.

### *2. Northern is estopped from asserting its second affirmative defense.*

For its second affirmative defense, Northern claims that ATI made material misrepresentations, and that if Northern succeeds in a separate lawsuit pending in the United States District Court for the Eastern District of Virginia, such finding "would be binding on" ISR in this action [Dkt. 26, p. 5]. The Court should find that Northern is estopped from relying in ATI's alleged misrepresentations as a defense to ISR's claims.

Although estoppel cannot be applied to create coverage where none existed in the first place, "an insurer may be estopped by its conduct from seeking a forfeiture of a policy . . . ." E.g., Six L's Packing Co., Inc. v. Florida Farm Bureau Mut. Ins. Co., 268 So. 2d 560, 563 (Fla. 4th DCA 1972). Moreover, "when an insurance company assumes the defense of an action, with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage.'" Cigarette Racing Team, Inc. v. Parliament Insurance Co., 395 So. 2d 1238 ( Fla. 4th DCA). In Doe v. Allstate Insurance Company, 653 So.2d 371 (Fla. 1995), the Florida Supreme Court held that the Fourth District Court of Appeal's decision in Cigarette Racing Team "comports with the doctrine of promissory estoppel enunciated in [the Florida Supreme Court's] decision in Crown Life Insurance Co. v. McBride, 517 So.2d 660 (Fla.1987)." It explained:

> Thus, when the insurer undertakes the defense of a claim on behalf of one claiming to be an insured, we have recognized substantial duties on the part of both the insurer and the insured. If an insurer erroneously begins to carry out these duties, and the insured, as required, relies upon the insurer to the insured's detriment, then the insurer should not be able to deny the coverage which it earlier acknowledged.

Id. at 374.

By several of its affirmative defenses, Northern now seeks to avoid coverage based upon facts of which it was well aware as early as Mr. Cortesseli's November 23, 2008 correspondence.

12

Most notable, by its Second Affirmative Defenses, Northern alleges that coverage does not exist because ATI allegedly made material misrepresentations in its application for the Policy. However, the deposition of Northern's corporate representative, Tom Kula, established that Northern was aware of these alleged misrepresentations at the time it delivered its reservations of rights letter to ISR in November 2008.

Northern's corporate representative admitted during his deposition that Northern had never advised ISR that it claimed that Policy was void by virtue of ATI's alleged misrepresentations. Kula Dep., p. 135 L. 10 -- p. 134 L. 10; p. 175 L. 20 -- p. 177, L. 20. Northern claims that ATI misrepresented its line of business when it applied for the Policy. Kula Dep., p. 59 L. 3 -- p. 62 L. 2. Specifically, it claims that ATI misrepresented itself as a ship fitter rather than a labor leasing company in its application for the Policy. Kula Dep, p. 119 L. 2 -- p. 121 L. 25. However, Northern was on notice that ATI was in fact engaged in leasing labor no later than November 23, 2008. Indeed, its letter to ISR specifically references the terms of the Subcontractor Agreement, whereby ATI agreed to provide labor to ISR. Kula Dep. P. 131 L. 10 -- p. 134 L. 13. In other words, Northern was clearly aware that ATI leasing workers as early as November 2008. Yet, Northern never advised ISR that it might deny coverage based on these alleged misrepresentations, and it did not serve it notice denying coverage until June 24, 2010, approximately nineteen months after its reservation of rights. Under these circumstances, upon a showing of prejudice to ISR, Northern should be estopped from asserting its Third Affirmative Defense.[40]

---

[40] ISR recognizes that under the cases cited above, whether ISR was prejudiced by the nineteen month delay is an issue of fact, particularly where the Action is still pending. Nonetheless ISR requests a partial summary judgment that Northern is estopped from asserting this defense if the trier of fact finds that ISR suffered prejudice as a result of Northern's eleventh-hour denial of the claim.

### 3. *Northern failed to preserve its coverage defenses.*

Section 627.426, Florida Statutes, provides a claims administration procedure that a liability insurer must follow in order to deny coverage to an insured based upon a "coverage defense." It provides, in pertinent part, as follows:

> A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
>
> (a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; and
>
> (b) Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:
>
> 1. Gives written notice to the named insured by registered or certified mail of its refusal to defend the insured;
>
> 2. Obtains from the insured a nonwaiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or
>
> 3. Retains independent counsel which is mutually agreeable to the parties. Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement is reached, shall be set by the court.

F.S.A. §627.426(2) (2011).[41] Thus, failure of an insurer to comply with this statute precludes the insurer from relying on any coverage defense to a claim if the claim falls within the insurance policy.

---

[41] This statute applies to Northern's administration of ISR's claim. See F.S.A. §627.401 (2011). The Policy named ISR as an additional insured and was delivered to ISR in Florida. Ex. 1(B). In addition, the risk insured by the Policy is not solely "wet marine and transportation insurance." See F.S.A. §627.401(3) (2011). For purposes of the Florida Insurance Code, "wet marine and transportation insurance" is defined as follows:

> For the purposes of this code, "wet marine and transportation insurance" is that part of marine insurance *which includes only*:
> (a) Insurance upon vessels, crafts, and hulls and of interests therein or with relation thereto;

ISR recognizes that in most circumstances, coverage which never existed in the first place may not be created as a result of the insurer's failure to comply with Section 627.426. E.g., State Farm Mut. Auto. Ins. Co. v Hinestrosa, 614 So.2d 633 (4th DCA 1993). However, if coverage otherwise exists, the carrier must follow the procedures set forth in the statute to rely on a coverage defense that otherwise exists or could exist under the law. Country Manors Ass' n Inc. v. Master Antenna Systems, Inc., 534 So.2d 1187 (Fla. 4th DCA 1988).

"[T]he term 'coverage defense,' as used in section 627.426(2), means a defense to coverage that otherwise exists." AIU Ins. Co. v. Block Marina Inv., Inc., 544 So.2d 998, 1000 (Fla.1989). "When the loss falls within the scope of coverage, but the insurer argues that other factors justify not fulfilling the contract, the insurer is asserting coverage defenses." Mid–Continent Cas. Co. v. King, 552 F.Supp.2d 1309, 1316 (N.D.Fla.2008). However, when the insurer argues that coverage is "expressly excluded or otherwise unavailable under the policy or under existing law," the insurer is not raising a coverage defense within the meaning of Section 627.426(2). AIU, 544 So.2d at 1000. An insurer's arguments that an insured has not timely provided proper notice of a claim or that an insured has failed to comply with a cooperation

---

   (b) Insurance of marine builders' risks, marine war risks, and contracts of marine protection and indemnity insurance;
   (c) Insurance of freights and disbursements pertaining to a subject of insurance coming within this definition; and
   (d) Insurance of personal property and interests therein, in course of exportation from or importation into any country, or in course of transportation coastwise or on inland waters, including transportation by land, water, or air from point of origin to final destination, in respect to, appertaining to, or in connection with any and all risks or perils of navigation, transit, or transportation, and while being prepared for and while awaiting shipment, and during any delays, storage, transshipment, or reshipment incident thereto.

F.S.A. §624.607(2) (2011)(emphasis added). While the risk insured by the Policy falls under the definition of "marine insurance" as defined in Section 624.607(1), it does not fit the definition of "wet marine" under Section 624.607(2). As such, Northern's administration of ISR's claim is subject to Chapter 627, Florida Statutes.

provision constitute coverage defenses. See Arnett v. Mid–Continent Cas. Co., 2010 WL 2821981, at *10 (M.D. Fla. Jul. 16, 2010).

Florida courts require strict compliance with Section 627.426(2) unless actual notice to the insured of the insurer's position has occurred on a timely basis. See Phoenix Ins. Co. v. McCormick, 542 So.2d 1030, 1031–32 (Fla. 2d DCA 1989); see also Patry v. Capps, 633 So.2d 9, 12 (Fla.1994) (citing Phoenix, 542 So.2d 1030, with approval); Prime Ins. Syndicate, Inc. v. Soil Tech Distribs., Inc., 2006 WL 1823562, at *5 (M.D. Fla. Jun. 30, 2006); Pepper's Steel & Alloys, Inc. v. U.S. Fidelity & Guar. Co., 668 F.Supp. 1541 (S.D. Fla.1987); Lazzara Oil Co. v. Columbia Cas. Co., 683 F.Supp. 777 (M.D.Fla.1988).

Here, there is no question that Northern failed to comply with Section 627.462, Florida Statutes. Northern's Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Thirteenth Affirmative Defenses [Dkt. 26] are all defenses to coverage that otherwise exists. In other words, in only the Tenth, Eleventh and Twelfth Affirmative Defenses does Northern claim that coverage does not exist in the first instance under the terms of the Policy. In the other affirmative defenses, Northern alleges other factors that may impact its liability. Moreover, it is undisputed that ISR notified Northern of the Action and requested a defense no later than July 2008. Northern's reservation of rights was not served until November 23, 2008. Ex. 1, ¶16. After agreeing to provide a defense subject to the reservation of rights, Northern did not provide ISR with formal notice that it was denying the claim until June 24, 2010. Even assuming Northern did not have reasonable notice of its coverage defenses at the time of its reservation of rights letter, the record evidences that it certainly had such notice more than sixty days prior to June 24, 2010, when it formally denied ISR's claim. Ex. 1, ¶18.

## IV. CONCLUSION

The undisputed facts establish that Morales was an employee of ATI who was assigned, as a temporary worker, to ISR for the sole purpose of assisting with the short-term project of completing repairs on DD-1. Northern cannot show there is any genuine issue of material fact supporting their claim that Morales is excluded from coverage because he was a "leased" worker, rather than a temporary worker. In addition, the evidence shows that Northern has failed to preserve its coverage defenses by failing to comply with Section 627.426, Florida Statutes. As a result, ISR requests partial summary judgment in its favor on these issues.

Respectfully submitted,

/s S. Douglas Knox
Paul E. Parrish
Florida Bar No. 373117
paul.parrish@quarles.com
Kelli A. Edson
Florida Bar No. 0179078
kelli.edson@quarles.com
S. Douglas Knox
Florida Bar No. 849871
douglas.knox@quarles.com
QUARLES & BRADY LLP
101 East Kennedy Blvd., Ste. 3400
Tampa, FL 33602-5195
Phone: 813-387-0300
Fax: 813-387-1800

Robert B. Birthisel
Florida Bar No. 906654
rbirthisel@hamiltonmillerlaw.com
Michael J. Bradford
Florida Bar No. 184314
mbradford@hamiltonmillerlaw.com
Hamilton, Miller & Birthisel, LLP
100 S. Ashley Drive, Suite 1210
Tampa, FL 33602
Phone: 813-223-1900

Fax: 813-223-1933
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on October 31, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

| | |
|---|---|
| Reginald M. Hayden, Jr., Esq.<br>Patricia Leigh McMillan Minoux, Esq.<br>Hayden, Milliken & Boeringer, P.A.<br>2121 Ponce De Leon Boulevard<br>Suite 730<br>Miami, FL 33134-5222 | Christopher R. Koehler, Esq.<br>Hayden, Milliken & Boeringer, P.A.<br>4923 S. West Shore Boulevard<br>Tampa, FL 33611-3329 |

           s/ S. Douglas Knox

QB\14938786.1