**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

INTERNATIONAL SHIP REPAIR
& MARINE SERVICES, INC.,

Plaintiff,

v. CASE NO: 8:10-cv-2049-T-26AEP

THE NORTHERN ASSURANCE
COMPANY OF AMERICA,

Defendant.
_________________________________/

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment with attachments (Dkt. 38), Plaintiff's Response in Opposition (Dkt. 49), Defendant's Reply (Dkt. 57), Plaintiff's Motion for Partial Summary Judgment and Statement of Undisputed Facts with attachments (Dkts. 34 & 35), and Defendant's Response in Opposition with exhibits. (Dkts. 50 & 51). After careful consideration of the applicable law and the entire record, the Court concludes that both motions should be denied.

**BACKGROUND**

This is a dispute involving coverage under a commercial general liability insurance policy issued to Advanced Technology, Inc. (ATI) by Defendant The Northern Assurance Company of America (Northern). ATI is in the business of providing workers to

companies like Plaintiff International Ship Repair & Marine Services, Inc. (ISR) that are in the business of ship repair and marine services. Pursuant to a Subcontractor Agreement dated March 28, 2005, between ATI and ISR, ATI agreed to supply personnel to ISR on an "as-needed, per project basis" and to "procure and maintain Commercial General Liability insurance in the amount of $1,000,000/$2,000,000, naming [ISR] as additional insured."[1] One of the issues is whether the policy issued by Northern made ISR an additional insured as required by the agreement between ATI and ISR. In this case, ISR seeks a determination of coverage in the death of a worker supplied by ATI, Wilfredo Morales-Montalvo, who died of heat stroke while welding in the bowels of a floating dry dock owned by ISR on August 9, 2006.[2] Morales-Montalvo had reported to work at ISR's shipyard facilities on August 8, 2006, just one day earlier, and was assigned to making repairs on the floating dry dock.[3]

The estate of Morales-Montalvo filed a wrongful death action in the Thirteenth Judicial Circuit of Hillsborough County, Florida, for $12,000,000.[4] In April 2008, the complaint was amended to add ISR based on a negligence theory. ISR notified Northern

---

[1] See docket 35, Braukman Aff. at para 3. & Exh. A, para. 6.c.

[2] See docket 38, Exh. 1, paras. 3 & 6 & Exh. C attached thereto; docket 35, Braukman Aff. at para. 11.

[3] See docket 35, Braukman Aff. at para. 11.

[4] See docket 35, Braukman Aff. at para. 13.

of the action and requested a defense no later than July 23, 2008.[5] Four months later, on November 23, 2008, Northern agreed to provide ISR with a defense under a full reservation of rights.[6] The reservation of rights was based on the absence of any agreement on the part of ATI to indemnify ISR for ISR's negligence as opposed to vicarious liability.[7] As a secondary reason supporting the reservation of rights, Northern noted that under the terms of the policy, ISR was not listed as an additional insured. Even if ISR did fall under the blanket additional insured endorsement, according to Northern, the endorsement providing for indemnity provisions does not void the exclusion for personal injuries to "employees."[8] On June 24, 2010, Northern, however, ceased to provide the defense of ISR, formally denying ISR's claim, based on the exclusion for personal injury to employees.[9] Three months later this action for declaratory relief and damages was filed.

**THE DOCUMENTS**

*Certificate of Insurance*

---

5 See docket 35, Braukman Aff. at para. 14.

6 See docket 35, Braukman Aff. at para. 16, & Exh. D attached thereto.

7 See docket 35, Braukman Aff. at para. 16 & Exh. D attached thereto.

8 See docket 35, Braukman Aff. at para. 16 & Exh. D attached thereto.

9 See docket 35, Braukman Aff. at para. 18 & Exh. E attached thereto.

ISR holds a Certificate of Liability Insurance showing ATI as the insured with coverage for commercial general liability, policy number 7321364,[10] in accordance with the Subcontractor Agreement.[11] The Certificate of Liability contains the following language:

> This Certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below.
>
> . . . .
>
> The policies of insurance listed below [including policy number 7321364][12] have been issued to the insured named above [ATI] for the policy period indicated [7/19/2006-7/19/2007], notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain. The insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies. Aggregate limits shown may have been reduced by paid claims.

*The Policy and Endorsements*

---

[10] This is not the policy number that corresponds to the comprehensive marine policy. The proper policy number is #N5J H11089. See docket 35, Braukman Aff. at para. 7 & Exh. C attached thereto.

[11] See docket 35, Braukman Aff. at para. 6 & Exh. B attached thereto; docket 38, Exh. 2 at p. 2.

[12] This is not the policy number that corresponds to the comprehensive marine policy. The proper policy number is #N5J H11089. See docket 35, Braukman Aff. at para. 7 & Exh. C attached thereto.

The Comprehensive Marine Liability Policy with Ship Repairer's Liability Endorsement was issued by Northern to ATI, covering July 19, 2006 through July 19, 2007.[13] A "blanket additional insured" endorsement is attached and provides as follows:

> This endorsement modifies coverage provided under the Comprehensive Marine Liability Coverage Form.
>
> . . . .
>
> 1. Section IV. of the policy (Who is an Insured) is amended to include any person or organization that you are obligated by an "insured contract" to include as Additional Insureds, but only with respect to liability arising out of "your work."
>
> 2. It is further agreed that we waive any right of recovery we may have against any such Additional Insured because of payments we make for "bodily injury" or "property damage" arising out of "your work" for that Additional Insured, but only to the extent of your obligation under the "insured contract."

Pursuant to Section IX, 9.f. of the policy, titled "Definitions," an "insured contract" means in pertinent part the following:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

The term "your work" is defined in pertinent part in Section IX, 24. of the policy as follows:

---

[13] See docket 35, Braukman Aff. at para. 7 & Exh. C attached thereto.

> a. Work or operations performed by you or on your behalf; and
> b. Materials, parts or equipment furnished in connection with such work in operations.

The blanket additional insured endorsement does not void exclusions under the policy. The policy contains the following exclusion in pertinent part for bodily injury:

> Notwithstanding anything to the contrary contained in this policy, it is hereby understood and agreed that this policy is subject to the following exclusions and that this policy shall not apply to:
>
> 2. "Bodily injury" or "property damages" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not pay for liability to damages:
>    a. Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement . . .

Section II, A.2.a. of the policy. The policy contains another exclusion for "employees" who suffer personal injuries:

> 4. c. Any liability of whatsoever nature of the insured to any other party arising out of "bodily injury" and/or "personal injury" to any of your "employees", including but not limited to any such liability for (I) indemnity or contribution whether in tort, contract or otherwise and (ii) any liability of such other parties assumed under contract or agreement.

Section II, A.4.c. of the policy. Section II, A.4.c. is voided, however, under the Action Over Indemnity Buy-Back Endorsement. In the definition section of the policy,

"employee" is defined as a "leased worker" but not a "temporary worker." Section IX, 6. of the policy. A "leased worker" is defined as follows:

> [A] person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

Section IX, 11. of the policy. A "temporary worker" is defined as "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." Section IX, 22. of the policy.

*The Subcontractor Agreement*

With respect to indemnification, the Subcontractor Agreement provides that ATI "agrees to indemnify, defend and save harmless, [ISR], . . . from and against all damage, loss or expense . . . caused by or in any manner connected with the Work and/or [ATI's] performance thereof."[14] As noted earlier, the "Work" referred to in the Subcontractor Agreement is defined as ATI's "supplying of personnel for [ISR] upon request and on an as-needed, per project basis (the "Term")."[15] The Subcontract Agreement is governed by the laws of Florida.[16]

**SUMMARY JUDGMENT STANDARD**

---

[14] See docket 35, Braukman Aff. at para. 3 & Exh. A, para. 7, attached thereto.

[15] See docket 35, Braukman Aff. at para. 3 & Exh. A, para. 2, attached thereto.

[16] See docket 35, Braukman Aff. at para. 3 & Exh. A, para. 9.k., attached thereto.

Summary judgment is appropriate where there is no genuine dispute regarding a material fact. Fed. R.Civ.P. 56(a). The court must review the record, and all of its inferences, in the light most favorable to the nonmoving party. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is particularly suited to cases of insurance coverage because the interpretation of a written contract is a matter of law to be decided by the court. See Technical Coating Applicators, Inc. v. U.S. Fidelity and Guar., Co., 157 F.3d 843 (11th Cir. 1998); DEC Elec., Inc. v. Raphael Constr. Corp., 558 So.2d 427, 428 (Fla. 1990). Moreover, in declaratory judgment actions, summary judgment may be entered if "the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." Northland Cas. Co. v. HBE Corp., 160 F.Supp.2d 1348, 1358 (M.D. Fla. 2001). The policy must contain clear and unambiguous wording to resolve the issue as a matter of law. Talat Enter., Inc. v. Aetna Life & Cas., 952 F.Supp. 773, 776 (M.D. Fla. 1996).

**CROSS MOTIONS FOR SUMMARY JUDGMENT**

Jurisdiction in this case derives from diversity jurisdiction pursuant to 28 U.S.C. § 1332. Where a federal court sits in diversity and the case requires consideration of state-law contract claims, the federal court applies the substantive law of the forum state. Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 412 F.3d 1224, 1227 (11th Cir. 2005). The insurance documents and the coverage issues are therefore governed

by Florida law. Florida law also governs the construction of the Subcontractor Agreement because that agreement contains a forum selection clause and the parties have not contested its applicability. This Court's interpretation regarding any ambiguity of the insurance policy is, under Florida law, a question of law to be decided by the court. See Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co., 757 F.2d 1172, 1174 (11th Cir.. 1985) (citing Smith v. State Farm Mut. Auto. Ins. Co., 231 So.2d 193, 194 (Fla. 1970)).

**ISR'S MOTION**

ISR seeks a partial summary judgment on three matters: (1) a finding that Morales-Montalvo was a "temporary worker" and not a "leased worker" or employee; (2) a finding that Northern's second affirmative defense that findings in a suit pending in the Eastern District of Virginia regarding misrepresentations made by ATI would be binding on ISR in this action, if ISR shows prejudice, is barred; and (3) a finding that Northern's affirmative defenses concerning coverage, numbers 2, 4, 5, 6, 7, 8, 9, and 13, are barred for failure to comply with section 627.426, Florida Statutes. Based on the following analysis, the Court finds that none of the findings can be resolved by way of summary judgment because of the existence of material issues of disputed fact.

To determine coverage under a policy, the court must first look to its plain language, and if the language is unambiguous, then the language controls. Sphinx, 412 F.3d at 1227-28 (citing Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla. 2003)); Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1187 (11th Cir.

2002) (citing Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000)). If the "relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the []other limiting coverage, the insurance policy is considered ambiguous." Hyman, 304 F.3d at 1187 (citing Anderson). If the policy is ambiguous, it must be construed liberally in favor of coverage and against the drafter, the insurer. Northland Cas. Co. v. HBE Corp., 160 F.Supp.2d 1348, 1358 (M.D. Fla. 2001). In the case of a policy exclusion, the language must be construed even more strictly against the insurer. Sphinx, 412 F.3d at 1228 (citing State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245, 1248 (Fla. 1986)).

The policy, by its own language, excludes employees of ISR as an additional insured from coverage for bodily injuries. The policy defines an employee as a "leased worker" but not a "temporary worker." The policy defines a leased worker as someone leased to ISR by a "labor leasing firm" under an agreement to perform duties related to the conduct of ISR's business. A temporary worker, which is specifically carved out from the definition of a leased worker, is someone furnished as a substitute for a permanent employee on leave or "to meet seasonal or short-term workload conditions."

ISR argues that Morales-Montalvo is a temporary worker, not a leased worker or an employee, based on ATI's providing him "to meet seasonal or short-term workload conditions." The policy does not define any part of "short-term workload conditions." ISR's Executive Vice President Braukman averred that ATI provided Morales-Montalvo

as a ship fitter for the purpose of effecting repairs on the floating dry dock, which was a short-term work load need.[17] Braukman, in his affidavit, averred that ISR would terminate Morales-Montalvo immediately upon the completion of the repairs to the dry dock.[18] ISR notes that Thomas Kula, Northern's corporate representative, would agree that if "Mr. Morales was hired for a short-term workload condition, then Mr. Morales would meet the policy's definition of a temporary worker."[19]

To the contrary, Northern cites the deposition of Charles Bennett, President of ATI, who testified that ATI is a labor leasing agency and is therefore a lease labor provider requiring that Morales-Montalvo fall within the definition of a leased worker.[20] Additionally, Northern asserts that the repair of the dry dock entailed leasing of workers from many staffing agencies.[21] Northern also claims, through the affidavit of Tad Humphreys, that the project of repairing the dry dock lasted from July 27, 2006, through November 17, 2006, which should be considered an open-ended project as opposed to a temporary assignment.[22]

---

17 See docket 35, Braukman Aff. at para. 8.

18 See docket 35, Braukman Aff. at para. 11.

19 See docket 35, Deposition of Thomas Kula, pp. 189-190.

20 See docket 51, Exh. 2, Deposition excerpt of C. Bennett.

21 See docket 51, Exh. 1, Humphreys Aff.

22 See docket 51, Exh. 1, Humphreys Aff.

In a case involving the exact same definition provisions of leased worker and temporary worker, interpretation of the phrase "short-term workload condition" was not before the court. Nat'l Indem. Co. of the South v. Landscape Mgmt. Co., 963 So.2d 361 (Fla.Dist.Ct.App. 2007). In another case with the same provisions, also cited by ISR, the court found that genuine issues of fact existed concerning whether the worker was furnished to meet short-term workload conditions. Pacific Emp'rs Ins. Co. v. Wausau Bus. Ins. Co., 508 F.Supp.2d 1167, 1177-78 (M.D. Fla. 2007). As in Wausau, this Court finds that genuine issues of material fact exist, when the evidence is viewed in the light most favorable to Northern. Consequently, summary judgment will not be entered, the Court having found an ambiguity in the insurance policy that cannot be resolved on this record at this juncture.

With respect to the second affirmative defense, the Court finds that resolving it requires an advisory opinion at this juncture based on the pendency of a lawsuit that has not yet been concluded. As to the remaining affirmative defenses challenged, the Court finds that genuine issues of material fact exist.

**NORTHERN'S MOTION**

Northern seeks a summary judgment finding that there is no coverage for ISR on the Northern policy issued to ATI. First, Northern contends that ISR is not a named, additional insured on the policy, and consequently no coverage should be extended to ISR. The certificate of liability insurance in this case was issued to ISR as certificate

holder, showing ATI as the insured. The certificate includes the statement that "ISR is named as additional insured on general liability." The amount of general liability insurance shown on the certificate indicates 1,000,000/2,000,000, coverage, as agreed upon in the Subcontractor Agreement. For all intents and purposes, the certificate of insurance purports to provide all of the coverage set forth in the Subcontractor Agreement.

A certificate of insurance issued by the insurer stating that the certificate holder is an additional insured, standing alone, "is evidence of 'additional insured' status." Int'l Metalizing & Coatings, Inc. v. M & J Constr. Co., 2010 WL 3517038, at *4 (M.D. Fla. 2010). Under these circumstances, "the insurer cannot refuse to honor its commitment simply because it was not further documented." Id. at *4. In a case in which the certificate contained disclaimers and limiting language similar to the language in this case, the court held that the disclaimers and limiting language does not alter the fact that the certificate holder enjoys status as an additional insured. Nat'l Union Fire Ins. Co. v. Liberty Mut. Ins. Co., 2008 WL 544732, at *5 (S.D. Fla. 2008). The language simply refers the certificate holder to the policy to ascertain the scope of the coverage. Id. at *5. "[T]he disclaimer language may result in a scenario where a party is an insured under the policy pursuant to a certificate of insurance, but is still not entitled to coverage under the policy because the claimed loss is outside the scope of coverage for the policy or is

specifically excluded." Id. In this case, the Court finds that the certificate of insurance is sufficient to grant ISR status as an additional insured under the ATI policy.

Second, Northern supports its argument of no coverage based on the absence in both the policy and the Subcontractor Agreement of an express intent to indemnify ISR for its own negligence. Northern relies on Allianz Ins. Co. v. Goldcoast Partners, Inc., 684 So.2d 336 (Fla.Dist.Ct.App. 1996), and other cases,[23] which hold that where an indemnification contract does not express in clear and unequivocal terms an intent to indemnify the purported additional insured for its own negligence, the law disfavors indemnity for a party's own negligence. Allianz is distinguishable from this case, however, because there is no indication that the claimant was actually a named additional insured under the policy. See Container Corp. of Am. v. Maryland Cas. Co., 707 So.2d 733, 735 n. 1 (Fla. 1998).

ISR relies on Container Corp. for the premise that the indemnity language of the Subcontractor Agreement is not dispositive of the coverage issue, and the policy language determines coverage because ISR is an additional insured. In Container Corp., an employee of the contractor sued Container, the plant operator, for injuries suffered as a result of Container's negligence. The plant operator, like ISR, was an additional insured

[23] See, e.g., Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co., 374 So.2d 487 (Fla. 1979); Univ. Plaza Shopping Ctr. v. Stewart, 272 So.2d 507 (Fla. 1973); H & H Painting & Waterproofing Co. v. Mechanic Masters, Inc., 923 So.2d 1227 (Fla.Dist.Ct.App. 2006);

through an endorsement; however, the policy did not refer to the contract of indemnity between the operator and the contractor. The Florida Supreme Court, noting that the policy did not refer to the indemnification agreement between the parties, held that the policy's language controlled with respect to coverage. Because the policy language was ambiguous and did not contain any limiting language with respect to coverage for the additional insured's own negligence, the case was remanded for further interpretation relevant to coverage.

Here, as in Container Corp., ISR is an additional insured by virtue of the certificate of insurance and the blanket additional insured endorsement. Unlike Container Corp., however, ATI's policy, in the additional insured endorsement, refers to the Subcontract Agreement as evidenced by the phrase "you are obligated by an 'insured contract' to include as additional insureds.'"[24] The Subcontract Agreement falls within the policy definition of "insured contract" as one in which ATI has "assume[d] tort liability of another party to pay for 'bodily injury' . . . to a third person."[25] The Subcontractor Agreement requires ATI to indemnify ISR "from and against all damage, . . . caused by or

---

[24] See Nat'l Union Fire, 2008 WL 544732, at * 5 (noting that language in the blanket additional insured amendment to the policy stating "for whom you have agreed in writing to provide liability insurance" constitutes specific reference to lease agreement).

[25] See docket 35, Braukman Aff. at para. 7 & Exh. C attached thereto (definition of "insured contract" under Section IX, 9.f. If the Subcontractor Agreement does not fall with the definition of "insured contract," then this fact would not preclude coverage. In that instance, the policy language controls regarding coverage without any reference to the Subcontractor Agreement, and the scope of coverage is based solely on the language of the policy..

in any manner connected with the Work and/or the Contractor's [ATI's] performance thereof."[26] The parties have not specifically addressed whether this phrase would encompass damage resulting from the negligence of ISR, but as in Container Corp., the language of the indemnity contract is not dispositive of the coverage issue.

In this case, while the additional insured endorsement references the Subcontractor Agreement by referring to an "insured contract," the coverage for ISR as an additional insured is "only with respect to liability arising out of 'your work.'"[27] Various policy provisions were analyzed in Container Corp., including "but only with respect to operations by or on behalf of the Named Insured," which were found ambiguous because the provisions did not contain limiting language with respect to whether the additional insured was entitled to coverage for its own negligence. The term "arising out of" is not ambiguous as a matter of law, but it must be interpreted broadly. See Monticello Ins. Co. v. City of Miami Beach, 2009 WL 667454, at * 7 (S.D. Fla. 2009) (quoting James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1275 (11th Cir. 2008), which cites Garcia v. Federal Ins. Co., 969 So.2d 288, 293 (Fla. 2007)). Moreover, it is certainly plausible that the injuries arose out of work performed by ATI through Morales-Montalvo. The policy in this case is unclear, at best, whether ISR is covered for its own

---

[26] See docket 35, Braukman Aff. at para. 3 & Exh. A, para. 7, attached thereto (indemnification provision).

[27] See docket 35, Braukman Aff. at para. 7 & Exh. C attached thereto (additional insured endorsement).

negligence. Having determined that whether the policy contemplated insuring ISR as an additional insured for its own acts of negligence is susceptible of differing interpretations as to coverage for ISR, the Court finds that summary judgment may not be entered based on the necessity of further development of the facts.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Defendant's Motion for Summary Judgment (Dkt. 38) is **DENIED.**

(2) Plaintiff's Motion for Partial Summary Judgment (Dkt. 34) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on November 23, 2011.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record